**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ARNESIA NICHELLE POWELL,

           Plaintiff,

vs.                                            Case No. 3:12-cv-190-J-34JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

           Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

### I. Status

Arnesia Nichelle Powell ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "Grand Mal Seizures, Chronic Chest Pain, Blockage Left Ventricle, Major Depression, Pelvic Pain, Obe[]sity, Thyroid Condition, Gastritis, Chronic Nausea, [and] Chronic Headaches," as well as pain in the lower back, and pain and swelling in the knees. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed April 24, 2012, at 179. On March 18, 2008, Plaintiff filed applications for DIB and SSI, alleging an onset date of February 28, 2007. Tr. at 153-54; see also Tr. at 199.[2] Plaintiff's

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida ("Local Rule(s)"), within fourteen (14) days after service of this document. Failure to file timely objections waives a party's right to de novo review. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a).

[2] Plaintiff's SSI application is not included in the administrative transcript.

applications were denied initially, see Tr. at 80, 81, 84-87, 88-91, and were denied upon reconsideration, see Tr. at 82, 83, 98-100, 101-03.

On June 24, 2010, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 38-79. At the time of the hearing, Plaintiff was forty-one (41) years old. Tr. at 41. The ALJ issued a Decision on September 3, 2010, finding Plaintiff not disabled through the date of the Decision. Tr. at 14-30. On January 31, 2012, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On February 23, 2012, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal. See Plaintiff's Brief (Doc. No. 14; "Pl.'s Br."), filed June 26, 2012. First, Plaintiff argues the ALJ "failed to include all of [Plaintiff]'s limitations in his hypothetical question to the [VE]." Pl.'s Br. at 1; see id. at 10-16. Within the first argument, Plaintiff contends the following: (A) the ALJ erred in not specifically accounting for moderate limitations in concentration, persistence, or pace; (B) the ALJ erred in electing not to include a limitation regarding Plaintiff's ability to complete a normal workday or workweek; and (C) the ALJ erred in not including any effects of Plaintiff's shoulder impairment in the hypothetical. Id. at 10-16; see also Plaintiff's Reply Brief (Doc. No. 18; "Reply"), filed September 17, 2012, at 1-4.[3] Second, Plaintiff asserts the ALJ erred in determining that Plaintiff's shoulder impairment is not a severe impairment. Pl.'s Br. at 1-2,

---

[3] At the parties' requests, Plaintiff was permitted to file the Reply, see Order entered September 17, 2012 (Doc. No. 17), and Defendant was permitted to file a Sur-Reply (Doc. No. 21; "Sur-Reply"), see Order entered October 2, 2012 (Doc. No. 20). The pages of the Sur-Reply are not numbered; therefore, citations herein are to the page numbers assigned by the Court's electronic filing system.

16-18. Third, Plaintiff contends the ALJ erred in assessing the side effects of Plaintiff's medications and her credibility. Id. at 2, 18-20; Reply at 4-8.

Regarding Plaintiff's first and second arguments, Defendant responds as follows: (A) the ALJ properly accounted for limitations in concentration, persistence, and pace; (B) the ALJ appropriately omitted any suggestion that Plaintiff would not be able to work a full workday or workweek; and (C) the ALJ properly found the shoulder impairment would not affect Plaintiff's ability to perform work, so the ALJ was not required to include any limitations resulting from the impairment in the hypothetical. See Defendant's Memorandum in Support of the Commissioner's Decision (Doc. No. 15; "Def.'s Mem."), filed August 24, 2012, at 4-13. As to the third argument, Defendant responds that the ALJ did not err in his consideration of the side effects associated with Plaintiff's medications and in discrediting Plaintiff. Def.'s Mem. at 4-5, 14. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned recommends that the Commissioner's final decision be reversed and remanded for the reasons explained herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

impairments that meets or medically equals one listed in the Regulations; (4) can perform

past relevant work; and (5) retains the ability to perform any work in the national economy.

20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five,

the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 14-30.  At step one,

the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since February

28, 2007, the alleged onset date."  Tr. at 16 (emphasis and citation omitted).  At step two,

the ALJ found Plaintiff suffers from "the following severe impairments: seizure disorder,

atypical chest pain, stomach pain, arthritic knee, arthritic hip, obesity, and depression."  Tr.

at 16 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does not

have an impairment or combination of impairments that meets or medically equals one of the

Listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 21 (emphasis and

citations omitted).

The ALJ determined Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff can] perform jobs at the medium level, which require no more than
> occasional balancing, climbing, crawling, crouching, kneeling, or stooping.
> [Plaintiff] can never climb ladders or scaffolds. [Plaintiff] can frequently work
> around various hazards, such as unprotected heights or dangerous
> machinery. [Plaintiff] has the ability to be around inhaled irritants on a
> frequent basis – such as dust, smoke, fumes, chemicals, and noxious gases.
> She can frequently work in extreme temperatures. [Plaintiff] is best suited for
> routine, repetitive, and simple work that does not require prolonged
> interpersonal interactions.

Tr. at 23 (emphasis omitted).  At step four, the ALJ found Plaintiff "is unable to perform any

past relevant work" as a head correction officer and a correction officer.  Tr. at 28 (emphasis

and citation omitted). At step five, after "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC]," the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including linen room attendant and hospital food service worker. Tr. at 29 (emphasis and citation omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . from February 28, 2007, through the date of th[e D]ecision." Tr. at 29 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported

by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As noted above, Plaintiff raises three issues on appeal.  For ease of discussion, the mental limitations are addressed first (Plaintiff's issue 1(A) and issue 1(B)), followed by the shoulder impairment (Plaintiff's issue 1(C) and issue 2), and finally, side effects of Plaintiff's medications and Plaintiff's credibility are discussed (Plaintiff's issue 3).

### A.  Mental Limitations (Plaintiff's Issue 1(A) and Issue 1(B))

Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC and hypothetical to the VE by not adequately accounting for Plaintiff's mental limitations.  Pl.'s Br. at 1, 11-15. Specifically, Plaintiff contends that the ALJ violated Eleventh Circuit law by not adequately accounting for moderate limitations in concentration, persistence, or pace.  Id. at 11-14.  In addition, Plaintiff asserts the ALJ should have included in the RFC and hypothetical that Plaintiff would have difficulty completing a normal workday or workweek.  Id. at 14-15. According to Plaintiff, two state consultants and Plaintiff's treating nurse practitioner opined Plaintiff "would have a moderate limitation in '[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.'"  Id. at 14 (citing Tr. at 564, 622, 674).  In support of the arguments that the RFC and hypothetical do not include proper limitations regarding Plaintiff's mental condition, Plaintiff also points out

that the ALJ never discussed or assigned any weight to the findings of treating psychologist Jacki Nesbitt, Psy.D.  Reply at 1-4.[5]

### 1. Relevant Facts/Findings of ALJ

The administrative transcript reflects that Dr. Nesbitt treated Plaintiff for "Major Depressive Disorder, Recurrent, Severe without Psychotic Features[.]" Tr. at 670.  The treatment spanned about one and one-half years, from December 2008 through June 2010.  See Tr. at 657-71.  Dr. Nesbitt included many of Plaintiff's symptoms, a diagnosis (as stated above), and a prognosis in her detailed progress notes.  Tr. at 657-71.  The ALJ did not discuss Dr. Nesbitt's progress notes in the Decision.  See Tr. at 14-30.

The administrative transcript also reflects that Steven Wise, Psy.D., a nonexamining psychologist, checked the "Moderately Limited" box on a Mental Residual Functional Capacity Assessment form dated July 8, 2008 when asked to opine about Plaintiff's limitations regarding her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. at 563-65.  Dr. Wise noted at the end of the form, however, that Plaintiff "can complete a normal workweek without excessive interruptions from psychologically based symptoms." Tr. at 565 (capitalization omitted).  It appears Dr. Wise was not convinced Plaintiff would have any particular difficulty in her ability to complete a normal workday and workweek.  The ALJ afforded Dr. Wise's

---

[5] Defendant urges the Court not to consider Plaintiff's contention that Dr. Nesbitt's findings were never considered by the ALJ, because the contention appears for the first time in Plaintiff's Reply.  According to Defendant, "the Court need not consider the new argument Plaintiff improperly raised for the first time in her Reply." Sur-Reply at 1 (citations omitted).  The undersigned views this particular contention as an expansion of Plaintiff's original arguments regarding Plaintiff's mental limitations, and therefore, will consider it.

opinion "significant weight," Tr. at 20, and Plaintiff does not specifically quarrel with the ALJ's Decision in that regard.

Further, Robin M. Johnson, Psy.D., a nonexamining psychologist, opined on a Mental Residual Functional Capacity Assessment form dated December 2, 2008 that Plaintiff would have moderate limitations in the ability to complete a normal workday and workweek without interruptions. Tr. at 622. In her comments at the end of the form, however, Dr. Johnson stated,

> [Plaintiff] would likely have moderate difficulties in completing a normal workweek without interruptions (more so due to pain and physical conditions than to depression) and would likely have moderate difficulties getting along with others due to consistent anger & irritability.
> . . .
> Despite these limitations, [Plaintiff] is able to meet the basic demands of work and retains the necessary mental capacities and skills to perform simple, repetitive, and basic work-related tasks/assignments in a structured environment.

Tr. at 623. It appears that like Dr. Wise, Dr. Johnson was of the opinion that Plaintiff would not have particular difficulty maintaining employment within certain parameters. See Tr. at 623. The ALJ afforded Dr. Johnson's opinion "considerable weight," Tr. at 20, and Plaintiff does not specifically quarrel with the ALJ's Decision in that regard.

Finally, Sandra Brooks, ARNP, Plaintiff's treating nurse practitioner, opined on a Mental Residual Functional Capacity Assessment form dated June 30, 2010 that Plaintiff would have marked limitations in the ability to complete a normal workday and workweek without interruptions. Tr. at 674. Regarding Ms. Brooks's opinion, the ALJ noted that "a nurse practitioner is not considered an 'acceptable medical source' within the regulatory definition (20 CFR 404.1513(a))[.]" Tr. at 21. Nevertheless, the ALJ "considered her

opinion" and "accord[ed] it little weight." Tr. at 21. Plaintiff does not specifically quarrel with the Decision in this regard.

Addressing Plaintiff's mental limitations, the ALJ found Plaintiff has "moderate difficulties" in maintaining concentration, persistence, or pace; "moderate limit[ations]" in her ability to maintain attention and concentration for extended periods; "moderate difficulties" in social functioning; "moderate[] limit[ations] in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; "mild restriction" in activities of daily living; and "mild limitations in her ability to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. at 23. In the RFC and hypothetical to the VE, the ALJ apparently attempted to account for these findings by stating the following: "[Plaintiff] is best suited for routine, repetitive, and simple work that does not require prolonged interpersonal interactions." Tr. at 23 (RFC in written Decision); see also Tr. at 72 (hypothetical to VE).

### 2. Law/Analysis

In the fifth step of the sequential evaluation process, an ALJ may pose a hypothetical question to a VE as part of his determination of whether the claimant can obtain work in the national economy. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)). When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished) (citation omitted). In determining an individual's RFC and later posing

a hypothetical to a VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citations omitted). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)).

Regarding a treating psychologist's[6] opinion,[7] the Regulations instruct ALJs how to weigh such opinions. See 20 C.F.R. § 404.1527(d). Because treating psychologists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating psychologist's opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the

---

[6] A treating psychologist is a psychologist who provides treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by evidence showing that the claimant sees or has seen the psychologist with a frequency consistent with accepted practice for the type of treatment and/or evaluation required for the condition. See 20 C.F.R. § 404.1502.

[7] Treating sources' opinions are statements from treating physicians, treating psychologists, and the like that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, what the claimant can still do despite the impairment, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513(a).

record. 20 C.F.R. § 404.1527(c)(2). When a treating psychologist's opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the psychologist. 20 C.F.R. § 404.1527(c).

If an ALJ concludes the opinion of a treating psychologist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating psychologist's own records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different . . . opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (finding no reversible error when "the ALJ articulated specific reasons for failing to give [a treating physician] controlling weight," and those reasons were supported by substantial evidence); Lewis, 125 F.3d at 1440.

Turning to the inclusion of mental limitations in an RFC and a hypothetical to a VE, in Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1181 (11th Cir. 2011), the Court found

error in an ALJ's decision because the ALJ failed to account for a claimant's moderate limitations in maintaining concentration, persistence, and pace. Post-Winschel, however, the Eleventh Circuit has recognized in an unpublished opinion that the inclusion of "a low-stress work environment" and "simple tasks" in a hypothetical to the VE accounts for a claimant's moderate limitations in concentration, persistence, and pace. See Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 871 (11th Cir. 2011) (unpublished) (finding that the limitations of simple tasks and only being able to concentrate for brief periods of time accounted for the claimant's moderate difficulties in concentration, persistence, and pace); see also Scott v. Comm'r of Soc. Sec., No. 11-15252, 2012 WL 5358868, at *2 (11th Cir. Oct. 31, 2012) (unpublished) (distinguishing Winschel and finding the ALJ's inclusion of certain limitations was adequate to account for the claimant's mental limitations); Dawson v. Comm'r of Soc. Sec., No. 6:11-cv-1128-ORL-28KRS, 2012 WL 1624267 (M.D. Fla. May 9, 2012) (unpublished) (collecting cases that recognize that the inclusion of limitations such as work involving simple tasks and/or simple instructions properly accounts for moderate limitations in concentration, persistence, and pace).

Here, the undersigned finds error in the ALJ's handling of Plaintiff's mental condition; accordingly, remand for further consideration is necessary. The ALJ did not assign any weight to Dr. Nesbitt's opinion, and he did not even mention Dr. Nesbitt's progress notes in the Decision. Tr. at 14-30. In fact, the ALJ wrongly stated that Plaintiff's "only Record mental health treatment is with a nurse practitioner . . . despite ingenuous hearing testimony that she's seeing a psychiatrist." Tr. at 28. Defendant does not contend that the ALJ was permitted to ignore Dr. Nesbitt's notes and opinion but argues that "any error . . . was

harmless because those records do not support limitations beyond those for which the ALJ accounted." Sur-Reply at 1-2. Defendant then goes on to independently evaluate how Dr. Nesbitt's progress notes and opinion "are not entitled to any particular weight because they are not well supported by medical evidence." Id. at 3; see id. at 2-5. Defendant's efforts to cure the deficiencies in the ALJ's Decision fail, especially because the Court cannot be satisfied that the ALJ even considered Dr. Nesbitt's notes and opinion, let alone that he assigned appropriate weight to the opinion. See Sharfarz, 825 F.2d at 279-80; Moore, 405 F.3d at 1212; Lewis, 125 F.3d at 1440. Remand is required for consideration of Dr. Nesbitt's notes and opinion, and for reconsideration of Plaintiff's mental limitations in light of Dr. Nesbitt's notes and opinion. On remand, the ALJ shall be sure to adequately account for any limitations he finds in the various functional areas. See Winschel, 631 F.3d at 1181.[8]

### B. Shoulder Impairment (Plaintiff's Issue 1(C) and Issue 2)

Plaintiff next argues the ALJ erred in finding that her shoulder impairment was not severe, and in failing to include any limitations resulting from her shoulder impairment in the hypothetical to the VE. Pl.'s Br. at 1-2, 15-18. In support of these arguments, Plaintiff primarily relies on notes of treating doctors Gregory Cisneros, M.D., Ronald Bathaw, M.D., and James Grimes, M.D., which notes document shoulder pain and/or resulting limitations. Id. at 16-18.

---

[8] Given that the matter must be remanded for further consideration of Plaintiff's mental limitations, the undersigned need not resolve Plaintiff's contention that the ALJ did not sufficiently comply with Winschel and its progeny by stating, "[Plaintiff] is best suited for routine, repetitive, and simple work that does not require prolonged interpersonal interactions." Tr. at 23; see Pl.'s Br. at 11-14.

### 1. Relevant Facts/Findings of ALJ

Plaintiff appeared at the emergency room in November of 2007 complaining of right shoulder pain. Tr. at 448-50, 500. An x-tray was taken. Tr. at 501. The emergency room physician diagnosed "tendonitis, bursitis[, and] rotator cuff injury" and prescribed vicodin. Tr. at 449; see also Tr. at 451.

Almost two years later, on July 24, 2009, Dr. Cisneros noted Plaintiff had decreased range of motion in her right shoulder, as well as "impingement sign, no swelling noted at this time." Tr. at 647. The plan at the time was to "consider PT and ortho, check x-ray and MRI of shoulder. Consider injection in the future." Tr. at 647. On August 17, 2009, Dr. Cisneros also noted that Plaintiff had right shoulder pain. Tr. at 645.

Plaintiff was referred by Dr. Cisneros to Dr. Bathaw. Tr. at 651-52. On December 17, 2009, Plaintiff complained to Dr. Bathaw of chronic left shoulder pain. Tr. at 650. Dr. Bathaw noted that the pain may have been the result of an injury occurring two or three years prior to Plaintiff's visit. Tr. at 650. Dr. Bathaw's plan was to obtain an MRI of the left shoulder. Tr. at 650. The administrative transcript does not reflect whether the plan was carried out.

Plaintiff next saw Dr. Grimes in relation to her left shoulder pain. Tr. at 655. Dr. Grimes noted during Plaintiff's evaluation on February 17, 2010 that Plaintiff "has had pain for over 1 year and she even had pain several years ago." Tr. at 655. Dr. Grimes noted the following about his physical examination of the left shoulder:

> Negative Spurling's and Lhermitee's. She has discomfort to her [l]eft biceps and subscapularis as well as her AC with a positive cross arm abduction. I am unable to perform an O'Brien's secondary to discomfort. She lacks internal

> rotation by 7 spinous processes on her left as compared to the right. She lacks external rotation by 30° on the left as compared to the right.

Tr. at 655. Dr. Grimes referred Plaintiff for physical therapy "for her shoulders and hips." Tr. at 655. He also recommended an evaluation by a rheumatologist. Tr. at 654.

In finding that Plaintiff does not suffer from any severe impairments related to her shoulders, the ALJ stated the following:

> [Plaintiff] sustained a right shoulder injury, which was diagnosed as bursitis.
> . . .
>
> [Plaintiff] also complained of left shoulder pain. Although x-rays of [Plaintiff's] left shoulder revealed very mild osteoarthritic changes, the shoulder is a non-weight bearing joint and there is evidence that there is no loss of range of motion in the shoulder.

Tr. at 21 (citations omitted). The ALJ elected not to include any limitations in the RFC and hypothetical related to Plaintiff's alleged shoulder impairments. Tr. at 23.

### 2. Law/Analysis

At step two of the sequential evaluation process, the ALJ must determine if a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id.; see also Hale v. Bowen, 831 F.2d 1007,

1011 (11th Cir. 1987) (stating "[a] claimant bears a heavy burden of establishing the existence of a disability [by first showing] that her impairment prevents her from performing her previous work"). Further, "[t]he severe impairment either must have lasted or must be expected to last for at least 12 months." Davis v. Barnhart, No. 06-11021, 186 F. App'x 965, 967 (11th Cir. 2006) (unpublished) (citing Barnhart v. Walton, 535 U.S. 212, 216 (2002)).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen v. Yuckert, 482 U.S. 137, 148 (1987). The Regulations provide six examples of "basic work activities": (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and unusual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); see also Davis, 186 F. App'x at 966-67.

As previously noted, at later steps of the sequential evaluation process, when assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, at *5; see also Swindle, 914 F.2d at 226 (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves, 734 F.2d at 525).

Here, the ALJ's handling of Plaintiff's left shoulder issues is insufficient. In finding that Plaintiff does not suffer from any severe impairment related to the shoulders, the ALJ misstated the medical evidence relating to Plaintiff's left shoulder. The ALJ found "there is

evidence that there is no loss of range of motion in the shoulder," Tr. at 23 (citing Tr. at 648-52), when in fact evidence exists in the administrative transcript– post-dating the evidence to which the ALJ cited– showing just the opposite. Dr. Grimes specifically noted a "lack[ of] internal rotation by 7 spinous processes on her left as compared to the right." Tr. at 655. He also stated that Plaintiff "lack[ed] external rotation by 30° on the left as compared to the right." Tr. at 655.

The ALJ also pointed out that the shoulder is a non-weight bearing joint, Tr. at 21, as if to suggest that any problem with Plaintiff's shoulder(s) would not affect Plaintiff's ability to work. As the Regulations state, however, an impairment is severe if it interferes with an individual's ability to perform basic work activities such as lifting, pushing, pulling, reaching, carrying, or handling, all of which may impact the shoulders. 20 C.F.R. § 404.1521(b); see also Davis, 186 F. App'x at 966-67.

The ALJ's findings with regard to Plaintiff's left shoulder at step two are not supported by substantial evidence. In addition, the ALJ did not impose any limitations on the use of the shoulders in the RFC and hypothetical to the VE, so the error at step two was not harmless. Remand is required for further consideration of Plaintiff's left shoulder issues.

### C. Medication Side Effects and Credibility (Plaintiff's Issue 3)

Plaintiff next contends the ALJ erred in evaluating her credibility and the side effects of her medications. Pl.'s Br. at 18-20; Reply at 4-8. According to Plaintiff, the ALJ improperly rejected the allegation that Plaintiff's medication makes her drowsy and erred in not making any other findings related to Plaintiff's side effects. Pl.'s Br. at 18-20.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson, 284 F.3d at 1225 (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223. Although "credibility determinations are the province of the ALJ," Moore, 405 F.3d at 1212, "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony, Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence").

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)); see also 20 C.F.R. § 416.929(c)(3)(i)-(vi) (providing the same). A claimant's ability to participate in daily activities for a short duration, however, does not preclude a finding of disability. See Lewis, 125 F.3d

at 1441 (finding that participation in everyday activities "such as housework and fishing" is insufficient to disqualify "a claimant from disability").

Here, the ALJ recognized that Plaintiff takes a multitude of medications, but in addressing the side effects, he simply stated that Plaintiff "has not alleged any serious side effects from these medications." Tr. at 28. In another portion of the Decision, however, the ALJ pointed to Plaintiff's allegation that her medications make her "drowsy" and discredited Plaintiff's specific allegation regarding drowsiness, Tr. at 25, 26, and her overall testimony to the extent that it was inconsistent with the RFC assessment, Tr. at 24-28. Notably, in October of 2008, Plaintiff filled out a questionnaire that stated the side effects included "bleeding gums, nausea, fatigue, terrible headaches, mood swings, and shifting teeth." Tr. at 262 (capitalization omitted). Thus, the ALJ was both inaccurate and inconsistent in stating Plaintiff had not alleged serious side effects, and on remand, the ALJ shall reassess the effects of Plaintiff's medication and Plaintiff's credibility.[9]

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is erroneous and remand is required. Accordingly, it is

**RECOMMENDED:**

1.     That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. §§ 405(g) and pursuant to 1383(c)(3) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

---

[9] It is worth mentioning that the undersigned was quite surprised by the tone of the written Decision, especially the ALJ's credibility findings. Although the undersigned is unsure what to make of the tone of the Decision, suffice it to say, it comes close to being outside the bounds of appropriateness.

  (A) Reevaluate the effects of Plaintiff's mental condition, being sure to include an evaluation of the notes and opinion of treating psychologist Jacki Nesbitt, Psy.D. and to account for any functional limitations in the residual functional capacity and hypothetical;

  (B) Reevaluate whether Plaintiff's left shoulder issues constitute a severe impairment and whether limitations resulting therefrom need to be included in the residual functional capacity and hypothetical;

  (C) Reevaluate Plaintiff's allegations of side effects and her credibility; and

  (D) Take such other action as may be necessary to resolve this claim properly.

2. That the Clerk be further directed to close the file.

3. That in the event benefits are awarded on remand, Plaintiff's counsel ensure that any Section 406(b) or 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on January 31, 2013.

*/s/ James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of record

-20-